IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


HENRIETTA HUTCHINS,

                    Plaintiff,

vs.                                    Case No. 13-1130-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits.  The matter has been fully briefed by the

parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's

decision to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.   42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On February 24, 2012, administrative law judge (ALJ) Joseph R. Doyle issued his decision (R. at 12-21). Plaintiff alleges that she had been disabled since December 7, 2010 (R. at 12). Plaintiff is insured for disability insurance benefits through

December 31, 2014 (R. at 14).  At step one, the ALJ found that
plaintiff did not engage in substantial gainful activity since
the alleged onset date (R. at 14).  At step two, the ALJ found
that plaintiff had the following severe impairments:  rheumatoid
arthritis, osteoarthritis of the bilateral knees, history of a
right hip replacement, history of left ankle repair, history of
sarcoidosis and asthma (R. at 14).  At step three, the ALJ
determined that plaintiff's impairments do not meet or equal a
listed impairment (R. at 15).  After determining plaintiff's RFC
(R. at 15), the ALJ determined at step four that plaintiff is
able to perform past relevant work as a customer service
representative (R. at 20).  Therefore, the ALJ concluded that
plaintiff was not disabled (R. at 21).

**III.  Did the ALJ err in his consideration of the opinions of
the treating physicians?**

When an ALJ rejects a treating physician's opinion, he must
give specific, legitimate reasons for doing so.  Hamlin v.
Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004); Robinson v.
Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004).

The record in this case includes two treating physician
opinions, Dr. Claiborne and Dr. Strickland.  Dr. Claiborne
opined on November 14, 2011 that plaintiff could only stand/walk
for 2 hours in an 8 hour day, and could only sit for 2 hours in
an 8 hour day (R. at 287-288).  Dr. Claiborne further opined on

December 6, 2011 that plaintiff can only work for 1-2 hours a

day, and because of asthma, must be in a clean environment as

far as air quality (R. at 329-330).  Dr. Strickland opined on

November 8, 2011 that plaintiff could stand/walk for 4 hours in

an 8 hour workday, and could sit for 8 hours in a workday, but

also opined that plaintiff would "possibly use a cane or walker

if painful" for ambulation or balance (R. at 285).

The ALJ stated the following regarding the opinions of Dr.

Clairborne and Dr. Strickland:

> The undersigned considered the opinions
> offered by the claimant's treating physician
> Richard Clairborne, M.D.  Dr. Clairborne
> opined that the claimant could not perform
> even sedentary work on a sustained basis.
> **Dr. Clairborne opined that the claimant
> would likely miss more than two or three
> days of work per month** (Exhibit B9F, B13F).
> **The undersigned also considered the opinion
> offered by treating physician Justin
> Strickland, M.D. who found that the claimant
> could not stand and/or walk for even two
> hours total in an eight-hour workday.  The
> undersigned gives these opinions little
> weight as they are not consistent with the
> objective medical record or the claimant's
> acknowledged activities**.  The claimant has
> osteoarthritis of the knees, which does not
> require surgery or narcotic pain medication.
> She reports significant relief from steroid
> injections.  On exam, she has no tenderness
> or swelling of any joints.  She has full,
> non-painful range of motion of all joints.
> She participates in aerobics three days a
> week.  This evidence establishes that the
> claimant is able to stand and/or walk for up
> to two hours a day.  Further, her
> osteoarthritis of the knees does not impose
> any significant sitting limitation, as there

> is no weight bearing on the joints while in
> the seated position.  Finally, the
> claimant's asthma does not impose
> significant limitations that would preclude
> remunerative work.  The claimant's asthma is
> well controlled with medication.  She has
> never had an emergency room admission for an
> acute flare up.  Based on the above, the
> undersigned gives these opinions little
> weight.

(R. at 19, emphasis added).  As noted above, the ALJ gave
"little" weight to the treating physician opinions, and
concluded that plaintiff could perform sedentary work (R. at
15).

The ALJ correctly indicates that Dr. Claiborne's opinions
precluded sedentary work.  However, the ALJ went on to say that
Dr. Claiborne opined that plaintiff would likely miss more than
two or three days of work per month.  However, Dr. Claiborne did
not indicate that plaintiff would likely miss more than two or
three days of work per month.

The ALJ further stated that Dr. Strickland opined that
plaintiff could not stand and/or walk for even two hours in an 8
hour workday.  However, that statement is clearly inaccurate.
Dr. Strickland's opinion was that plaintiff could stand and/or
walk for 4 hour a day, and sit for 8 hours a day (R. at 284).

The court is very concerned with the fact that one of the
two opinions of Dr. Clairborne set forth by the ALJ in his
decision was inaccurate, and that the only opinion of Dr.

Strickland set forth by the ALJ was also inaccurate.  The ALJ must provide legitimate reasons for giving little or no weight to a treating physician opinion.  However, in order for the ALJ to provide legitimate reasons for giving little or no weight to a treating physician opinion, he must first accurately set forth their opinions.  Reasons given for discounting opinions the treating physicians never expressed are clearly irrelevant. When the ALJ clearly misstates the opinions of the treating physicians, a legitimate question is raised as to whether the ALJ was aware of their actual opinions, and considered their actual opinions when determining plaintiff's RFC.

Furthermore, the opinions of Dr. Strickland actually support the ALJ's finding that her limitations in standing and/or walking and sitting do not preclude sedentary work. However, Dr. Strickland also opined that plaintiff would "possibly use a cane or walker if painful" for ambulation or balance (R. at 285).  This opinion was not mentioned or discussed by the ALJ.   Both Dr. Strickland and Dr. Claiborne opined that plaintiff was limited to occasional balancing (R. at 285, 288).  However, the ALJ found that plaintiff can frequently engage in activities requiring balancing (R. at 15).[2]

---

[2] These treating physician opinions conflict with the opinions of Dr. Siemsen, a non-examining physician, who opined that plaintiff could frequently balance, and did not indicate that plaintiff needed a cane or walker (R. at 78-85).  However, it is clear from Dr. Siemsen's report that he did not have before him the opinions of either treating physician (R. at 84).

If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WLL 374184 at *7.  Furthermore, when there are conflicting medical opinions, the ALJ must explain the basis for adopting one and rejecting another.  <u>Quintero v. Colvin</u>, 2014 WL 2523705 at *4 (10th Cir. June 5, 2014); <u>Reveteriano v. Astrue</u>, 490 Fed. Appx. 945, 947 (10th Cir. July 27, 2012).  The ALJ did not even mention the above opinions by the treating physicians, or offer any explanation for not adopting them.

According to SSR 96-9p:

> Medically required hand-held assistive device: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one

> hand may still have the ability to perform
> the minimal lifting and carrying
> requirements of many sedentary unskilled
> occupations with the other hand.[FN7] For
> example, an individual who must use a hand-
> held assistive device to aid in walking or
> standing because of an impairment that
> affects one lower extremity (e.g., an
> unstable knee), or to reduce pain when
> walking, who is limited to sedentary work
> because of the impairment affecting the
> lower extremity, and who has no other
> functional limitations or restrictions may
> still have the ability to make an adjustment
> to sedentary work that exists in significant
> numbers. **On the other hand, the occupational
> base for an individual who must use such a
> device for balance because of significant
> involvement of both lower extremities (e.g.,
> because of a neurological impairment) may be
> significantly eroded.**
>
> **In these situations, too, it may be
> especially useful to consult a vocational
> resource in order to make a judgment
> regarding the individual's ability to make
> an adjustment to other work.**

SSR 96-9p, 1996 WL 374185 at *7 (emphasis added).

The need to use an assistive device can be considered a manipulative limitation. This requires an evaluation and a finding by the ALJ as to whether this non-exertional impairment was severe enough to preclude the claimant from performing a wide range of sedentary work. Jones v. Astrue, 310 Fed. Appx. 286, 290 (10th Cir. Feb. 6, 2009); Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

SSR 96-9p also states that if a person is limited in balancing even when standing or walking on level terrain, there

may be a significant erosion of the unskilled sedentary
occupational base.  Furthermore, it is important to state in the
RFC assessment what is meant by limited balancing in order to
determine the remaining occupational base.  Consultation with a
vocational resource may also be appropriate.  1996 WL 374185 at
*7.

In light of SSR 96-9p, the ALJ should have considered the
opinion of Dr. Strickland that plaintiff would possibly use a
cane or walker if painful for ambulation or balance, and the
opinions of both treating physicians that plaintiff be limited
to occasional balancing.  In light of the ALJ's clear
misstatements of the opinions of both treating physicians, and
the ALJ's failure to accurately set forth any of Dr.
Strickland's opinions, the court cannot determine if the ALJ
gave any consideration to their opinions on these limitations.
These opinions are clearly relevant in light of SSR 96-9p, which
indicates that the occupational base for an individual who must
use an assistive device for balance because of significant
involvement of both lower extremities may be significantly
eroded, and that a person limited in balancing even when
standing or walking on level terrain may result in a significant
erosion of the unskilled sedentary occupational base.  On
remand, it would be advisable to obtain clarification on what
the treating physicians meant by limited balancing, and whether

the assistive device for balance is because of significant involvement of both lower extremities.

## IV.  Are the ALJ's credibility findings supported by substantial evidence?

Plaintiff also asserts error by the ALJ in his credibility findings.  The court will not address this issue because it may be affected by the ALJ's resolution of the case on remand after properly considering the medical opinions of the treating physicians.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 9th day of July 2014, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge